UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH BERNAL, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) 16 C 1904 ) ) Judge Gary Feinerman |
| vs. | ) ) |
| NRA GROUP, LLC, | ) ) |
| Defendant. | ) |

**M**EMORANDUM **O**PINION AND **O**RDER

In this putative class action, Joseph Bernal alleges that NRA Group, LLC attempted to collect delinquent consumer debts by sending him and members of the putative class a form collection letter that violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., by purporting to assess a percentage-based collection fee. Doc. 1. NRA answered and asserted affirmative defenses. Doc. 12. Bernal now moves for class certification pursuant to Federal Rule of Civil Procedure 23. Doc. 17. The motion is granted.

**Background**

Congress enacted the FDCPA to eliminate abusive debt collection practices and to protect debt collectors who abstain from abusive practices. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010); *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015). Section 1692e of Title 15 prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see Ruth v. Triumph P'ships,* 577 F.3d 790, 799-800 (7th Cir. 2009). This provision, essentially a "rule against trickery," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 473 (7th Cir. 2007), sets forth "a nonexclusive list of

1

prohibited practices" in sixteen subsections, *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1019 (7th Cir. 2014). Section 1692f prohibits debt collectors from employing "unfair or unconscionable means to collect or attempt to collect any debt," including attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Bernal lives in Illinois. Doc. 1 at ¶ 3. NRA operates a nationwide delinquent debt collection business, acts as a debt collector within the meaning of the FDCPA, and is licensed as a debt collection agency in Illinois. *Id*. at ¶¶ 4-6. NRA sent Bernal a collection letter dated February 17, 2015, demanding payment of a debt that Bernal allegedly owed to Six Flags Entertainment Corporation. *Id*. at ¶ 7; Doc. 1-3. The Six Flags agreement on which Bernal allegedly defaulted provides:

> If your account is in arrears for more than 30 days (after you miss two payments) and the Minimum Term has not yet expired, then your account will be permanently cancelled and you will be subject to the Termination Fee, plus costs (including reasonable attorney's fees) incurred by us in attempting to collect amounts due or otherwise enforcing this agreement, or 2) the Minimum Term has expired, then your account will be permanently cancelled and you will be billed for any amounts that are due and owing plus any costs (including reasonable attorney's fees) incurred by us in attempting to collect amounts due or otherwise enforcing this agreement.

Doc. 22-1 at 2. The collection letter stated a principal balance of $267.31 and an additional $43.28 in "costs," for a total "amount owed" of $310.59. Doc. 1 at ¶ 7; Doc. 1-3 at 1.

Bernal alleges that the $43.28 did not represent the actual cost to NRA of collecting the debt, but rather reflected a flat sixteen percent collection fee, and that NRA's attempt to collect that fee violated §§ 1692e and 1692f. Doc. 1 at ¶¶ 7, 10-17. The proposed class consists of other Illinois residents from whom NRA attempted to collect a debt owed to Six Flags, plus a

percentage-based collection cost, with the same form collection letter that Bernal received. *Id*. at

¶¶ 18, 20. The proposed class is defined as follows:

> [A]ll persons similarly situated in the State of Illinois from whom Defendant attempted to collect a delinquent consumer debt allegedly owed for a Six-Flags account, via a collection letter identical to the letter that is attached to the Complaint … as to which a percentage based charge for "Costs" had been added to the debt, from one year before the date of this Complaint [February 3, 2016] to the present.

Doc. 17 at ¶ 6.

## Discussion

A court's analysis of class certification "is not free-form, but rather has been carefully scripted by the Federal Rules of Civil Procedure." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi*, 797 F.3d 426, 433 (7th Cir. 2015). To be certified, a proposed class must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories in Rule 23(b): "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011); *see also Bell*, 800 F.3d at 373. Finally, the class must be "identifiable as a class," meaning that the "class definitions must be definite enough that the class can be ascertained."

3

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659-61 (7th Cir. 2015). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks omitted).

The putative class representative bears the burden of showing that each requirement is satisfied. *See Chi. Teachers Union*, 797 F.3d at 433; *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Although "as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained[,] … the boundary between a class determination and the merits may not always be easily discernible," *Retired Chi. Police*, 7 F.3d at 598-99 (internal quotation marks omitted), and "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Chi. Teachers Union*, 797 F.3d at 435 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)) (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (noting that class certification analysis "[f]requently … will entail some overlap with the merits of the plaintiff's underlying claim") (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)) (internal quotation marks omitted). "[A] district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011). The Seventh Circuit has instructed district

courts to exercise "caution" before certifying a class. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008). That caution demands a close look at each Rule 23 requirement.

I.  **Ascertainability**

As noted, a class definition "must be definite enough that the class can be ascertained." *Oshana*, 472 F.3d at 513; *see also Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495-97 (7th Cir. 2012); 7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1760 (3d ed. 2016) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."). "Class definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits (so-called 'fail-safe' classes)." *Mullins*, 795 F.3d at 657.

Each federal court of appeals to confront the issue has held that a debt collectors attempt to impose percentage-based collection costs or fees absent a prior express agreement violates the FDCPA, unless such costs are allowed by applicable state law. *See Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609-10 (11th Cir. 2014) ("Because there was no express agreement between Urology and Bradley allowing for collection of the 33-and-1/3% fee, that fee violates the FDCPA.") (citing 15 U.S.C. § 1692e); *Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318, 1318 (8th Cir. 2000) (per curiam) ("CUR violated the FDCPA when it charged Kojetin a collection fee based on a percentage of the principal balance that remained due rather than the actual cost of the collection."); *see also Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112-13 (7th Cir. 2008) (holding that a fifteen percent collection fee was impermissible "because the record is insufficient to support a finding that the … fee reflects AFNI's actual costs"); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175-76 (3d Cir. 2015) (holding that seeking "to collect fees for not-

yet-performed legal services and expenses" violated the FDCPA); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331-32 (6th Cir. 2006) (same).  NRA contends that the proposed class is not ascertainable because "[t]o the extent liability, if any, turns on whether or not the 'costs' charged to each putative class member were expressly authorized by the agreement creating the debt *or permitted by law*, class membership cannot be determined without conducting individualized inquiries into the facts and circumstances surrounding formation of the agreements at issue."  Doc. 22 at 7.  Specifically, NRA argues that "it is not clear, for example, *where* the agreements were entered into by proposed class members and whether prevailing law in such jurisdictions would permit the inclusion of such costs."  *Ibid*. (emphasis in original).  This argument fails to persuade.

     First, settled law holds that "[i]f there are material factual disputes" regarding class certification, "the court must receive evidence and resolve the disputes before deciding to certify the class."  *Messner*, 669 F.3d at 811 (internal quotation marks omitted).  But NRA presents *no* evidence—not even an affidavit—that any putative class member, all from Illinois, entered into her Six Flags contract in a jurisdiction that permits percentage-based collection costs.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) ("The [district] court was … mistaken to think that the proposed class could not be certified because it includes a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.  It did not cite any evidence in the record to support this assumption, which was squarely contradicted by the [evidence].") (internal quotation marks omitted); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 608 (7th Cir. 1997) (in rejecting the defendants' argument against class certification, noting that they "presented no evidence").  Nor has NRA attempted to show that any such jurisdiction exists.

Second, and similarly, NRA adduces no evidence that any putative class member signed a Six Flags agreement different than Bernal's, much less one that expressly authorized the imposition of percentage-based collection costs. Although NRA undoubtedly could have obtained the putative class members' contracts with Six Flags—it could have asked its client Six Flags, and if Six Flags did not cooperate, it could have followed up with a subpoena—the only contract of record is Bernal's. Doc. 22-1. Moreover, NRA does not dispute Bernal's contention that "the Six Flags Agreement at issue is a uniform, on-line contract that the consumer accepts electronically." Doc. 23 at 3. And NRA gives no reason to believe, and none are apparent, that Six Flags in fact entered into contracts with any members of the putative class that are different from Bernal's contract.

Third, NRA's argument appears to rest in part on "the potential difficulty of identifying particular members of the class and evaluating the validity of claims they might eventually submit." *Mullins*, 795 F.3d at 657. But that is not the standard for ascertainability. Although some federal courts have applied this "heightened ascertainability requirement," *see Byrd v. Aaron's Inc.*, 784 F.3d 154, 168 (3d Cir. 2015), the Seventh Circuit has expressly disavowed it, *see Mullins*, 795 F.3d at 658. For a class to be ascertainable in the Seventh Circuit, the "class must be defined clearly" and class "membership [must] be defined by objective criteria." *Id*. at 657. Class membership in this case is as objective as it comes: all Illinois residents from whom NRA attempted to collect a delinquent consumer debt allegedly owed for a Six Flags contract via a collection letter identical to the letter attached to the complaint, as to which a percentage-based charge for collection costs had been added to the debt and that was dated on or after February 3, 2015. Doc. 17 at ¶ 6. This class is easily ascertainable.

Fourth, NRA contends that the class is "overly broad." Doc. 22 at 7. A proposed class may not be "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." But, again, NRA has adduced no evidence to suggest that *any* members of the putative class were not harmed.

Last, NRA contends that the "class [may] include[] members who not been injured by [NRA's] alleged misconduct," creating "a problem with standing." Doc. 22 at 7. This argument improperly conflates "standing and entitlement to relief," which "are not the same thing." *Arreola v. Godinez,* 546 F.3d 788, 794-95 (7th Cir. 2008) ("[I]t is best to confine the term 'standing' to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria."). Contrary to NRA's understanding, the Seventh Circuit has recognized "that a class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also Bell*, 800 F.3d at 380; *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified."); *Suchanek*, 764 F.3d at 757 ("If the [district] court thought that no class can be certified until proof exists that every member has been harmed, it was wrong.").

The standing inquiry for class actions pertains only to the class representative. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966-69 (7th Cir. 2016) (assessing standing in a putative class action with respect only to the named plaintiffs); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015) ("Quite simply, requiring Article III standing

8

of absent class members is inconsistent with the nature of an action under Rule 23."). NRA does not challenge Bernal's standing, and nor could it. The "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation and internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548. Although "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," Congress through legislation may establish "*de facto* injuries" as "legally cognizable." *Id*. at 1549 (internal quotation marks omitted).

As noted, Congress established the FDCPA to eliminate abusive debt collection practices, *see Jerman*, 559 U.S. at 577; *Bentrud*, 794 F.3d at 874, including "misleading debt collection communications," *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014). Here, NRA's collection letter allegedly violated Bernal's right to be free from such misleading communications. The harm that he suffered may be intangible, given that it is not alleged that he actually paid the disputed percentage-based collection costs, but "intangible injuries can nevertheless be concrete," and "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is … instructive and important." *Spokeo*, 136 S. Ct. at 1549. The type of injury alleged here, receiving a debt collection letter that, it is alleged, wrongly assesses percentage-based collection costs, is concrete. *See Keele v.*

9

*Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998) (holding that the harm allegedly suffered by the plaintiff from receiving a collection letter making an allegedly unlawful demand for a $12.50 collection fee was sufficient to establish Article III standing, and adding that it was "irrelevant whether or not [the plaintiff] paid the collection fee"); *Church v. Accretive Health, Inc.*, __ F. App'x __, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding, post-*Spokeo*, that the plaintiff had Article III standing based on receipt of a debt collection letter that did not include certain disclosures required by the FDCPA, even though "the injury may not have resulted in tangible economic or physical harm"). And because the letter was sent individually to Bernal, his injury was "particularized," as it "affect[ed] [him] in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). Finally, that injury resulted from NRA's sending the collection letter, and a favorable judicial decision could compensate Bernal for that injury through an award of statutory damages. *See* 15 U.S.C. § 1692k(a)(2); *Tourgeman*, 755 F.3d at 1116. He has standing to pursue the suit.

## II. Rule 23(a)

### A. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that "[e]ven if the class were limited to 40 [members] … that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions." *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 n.5 (3d Cir. 2013) ("While no minimum number of plaintiffs is required to maintain a suit as a class action

… generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.") (internal quotation marks omitted). A plaintiff need not plead or prove the exact number of class members to establish numerosity, *see Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1987), and the court may make common sense assumptions in the Rule 23(a)(1) inquiry. *See Arreola,* 546 F.3d at 797 (finding numerosity after the plaintiff identified fourteen class members and introduced evidence that "support[ed] a much larger estimate"); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978) ("[D]ifficulty in determining the exact number of class members does not preclude class certification."); William Rubenstein *et al.*, *Newberg on Class Actions* § 3:13 (5th ed. 2016) ("Generally, a plaintiff must show enough evidence of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members."). Still, "the party supporting the class cannot rely on mere speculation or conclusory allegations as to the size of the putative class … for numerosity purposes." *Arreola,* 546 F.3d at 797 (internal quotation marks omitted).

NRA disclosed in discovery that it sent 1,096 letters "in the same form as that sent to Plaintiff Bernal, to persons within the State of Illinois during the class period." Doc. 18 at 4; Doc. 18-2 at ¶ 13. Rehashing its argument against ascertainability, NRA contends that 1,096 "represents the absolute maximum number of persons that could ever be included in the proposed class," because percentage-based collection costs could have been expressly authorized by some putative class members' Six Flags agreements or permitted by law in the jurisdictions in which they entered those agreements. Doc. 22 at 8. NRA's argument is without merit for the reasons discussed above: NRA presents no such evidence that, and offers no reason why, any such putative class members might exist, and courts routinely certify classes that include some members who are ultimately not entitled to recovery. *See Bell*, 800 F.3d at 380; *Parko*, 739 F.3d

at 1085; *Suchanek*, 764 F.3d at 757; *Kohen*, 571 F.3d at 677. NRA criticizes the 1,096 number as impermissible "guesswork," Doc. 22 at 8, ignoring both that NRA provided that figure to Bernal and that NRA's own highly speculative argument against numerosity involves far more guesswork than does Bernal's argument in favor. For purposes of class certification, Bernal has "prove[n] that there are *in fact* sufficiently numerous parties," *Dukes*, 564 U.S. at 350, and therefore the proposed class satisfies Rule 23(a)(1).

### B. Rule 23(a)(2): Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," *Dukes*, 564 U.S. at 349-50 (internal quotation marks omitted), and that their "claims 'depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Phillips v. Sheriff of Cook Cnty.*, __ F.3d __, 2016 WL 3615761, at *7 (7th Cir. July 6, 2016) (quoting *Dukes*, 564 U.S. at 350); *see also Chi. Teachers Union*, 797 F.3d at 434. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Dukes*, 564 U.S. at 359 (alterations and internal quotation marks omitted); *see also Phillips*, 2016 WL 3615761, at *7 ("[A] prospective class must articulate at least one common question that will actually advance all of the class members' claims.").

The commonality requirement is easily satisfied here. Each putative class member's claim presents a common question: whether NRA's form collection letter—in particular, the letter's assessment of percentage-based collection costs—violated the FDCPA. Doc. 18 at 4-5; *see Berger v. Xerox Corp. Ret. Inc. Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) ("What is sought is a declaration that Xerox's method of computing the lump sums to which withdrawing employees are entitled is unlawful. That is a ground common to all members of the class.").

12

Even if NRA's entirely speculative assertion that some putative class members' Six Flags agreements expressly authorized percentage-based collection costs or that some putative class members entered those agreements in jurisdictions that permitted such costs were true—and NRA, again, has adduced no evidence to support its speculation—the proposed class would still satisfy the commonality requirement, because "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano*, 633 F.3d at 585; *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). NRA presents no other challenge to commonality, and so the proposed class satisfies Rule 23(a)(2).

### C. Rule 23(a)(3): Typicality

The Rule 23(a)(3) typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police*, 7 F.3d at 597. Typicality is satisfied when the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (alterations and internal quotation marks omitted).

NRA asserts once more that putative class members may have signed different Six Flags agreements or may have done so in jurisdictions that permitted percentage-based collection costs. Doc. 22 at 10. Setting aside the lack of evidence or even reasoned explanation for the assertion, "typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also*

*Rosario*, 963 F.2d at 1018 ("[W]e look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)."); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008) ("Factual differences will not defeat typicality *if* the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory."). All proposed class members are alleged to have received the same collection letter from NRA, there is no evidence to the contrary, and that is enough to satisfy the typicality requirement.

### D. Rule 23(a)(4): Adequacy

Adequacy involves two inquiries: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). A proposed class representative is inadequate if her interests are "antagonistic or conflicting" with those of the absent class members, *Rosario*, 963 F.2d at 1018, or if she is subject to a defense not applicable to the class as a whole. *See CE Design*, 637 F.3d at 726; *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011); *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994); *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974). Likewise, "[a] person whose claim is idiosyncratic or possibly unique is an unsuitable class member." *Suchanek*, 764 F.3d at 758 (citing *Falcon*, 457 U.S. at 156-59).

Bernal's claim is not idiosyncratic or unique, and his interests do not conflict with those of the absent class members. He suffered precisely the same injury and has precisely the same interest in the outcome of the litigation. As for the adequacy of counsel, Bernal's lawyers are experienced FDCPA litigators. Doc. 18-2. Other than reiterating its meritless argument

regarding putative class members' individual agreements and hypothetical legal variations across jurisdictions, NRA does not challenge Bernal's adequacy as a class representative or counsel's adequacy to represent the class. *See* Doc. 22 at 10-11. The proposed class thus satisfies Rule 23(a)(4).

**III.   Rule 23(b)(3)**

Bernal contends that the putative class satisfies Rule 23(b)(3). Doc. 18 at 6-7; Doc. 23 at 7-8. A class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors pertinent to superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Ibid*.

   **A.   Predominance**

"Analysis of predominance under Rule 23(b)(3) 'begins … with the elements of the underlying cause of action.'" *Messner*, 669 F.3d at 815 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As the Supreme Court explained:

> To gain class-action certification under Rule 23(b)(3), the named plaintiff must demonstrate, and the District Court must find, that the questions of law or fact common to class members predominate over any questions affecting only individual members. This predominance requirement is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation, but it scarcely demands commonality as to all questions. In

15

> particular, when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.

*Comcast Corp.*, 133 S. Ct. at 1436-37 (alterations, citations, and internal quotation marks omitted).

While similar to the Rule 23(a)(2) commonality requirement, the predominance requirement is "far more demanding." *Amchem Prods.*, 521 U.S. at 624. Predominance is not satisfied where liability determinations are individual and fact-intensive, *see Kartman*, 634 F.3d at 891, and "[m]ere assertion by class counsel that common issues predominate is not enough," *Parko*, 739 F.3d at 1085 (alterations omitted). Predominance fails where "affirmative defenses will require a person by person evaluation of conduct to determine whether [a defense] precludes individual recovery." *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 F. App'x 818 (7th Cir. 2007); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[W]hile it is well established that the existence of a defense potentially implicating different class members differently does not necessarily defeat class certification, it is equally well established that courts must consider potential defenses in assessing the predominance requirement.") (alterations and citations omitted).

Predominance is satisfied here. As noted above in discussing commonality, the most significant issue in this case—whether NRA violated the FDCPA by sending a form collection letter that assesses percentage-based collection costs—can be resolved on a classwide basis, without any individual variation. *See Keele*, 149 F.3d at 595. Mirroring its arguments regarding ascertainability and Rule 23(a), NRA maintains that inquiries into liability will necessarily be individualized, requiring evaluation of class members' individual agreements and the jurisdictions in which they entered into those agreements. Doc. 22 at 11-12. That argument is without merit for the reasons set forth above. And if it turns out that some of the Illinois putative

16

class members either entered into their Six Flags contracts in States that allow percentage-based collection costs or entered into contracts that allow such costs, sub-classes may be created.

NRA's other argument against predominance, that some class members may not have actually received the form collection letters that NRA sent, *id*. at 11, also lacks merit. "The law presumes timely delivery of a properly addressed piece of mail." *Bobbitt v. Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001); *see also Hayes v. Potter*, 310 F.3d 979, 982 (7th Cir. 2002) ("We will generally presume timely delivery of properly addressed mail."). NRA has adduced no evidence that class members did not receive the letters or that the letters were not properly addressed. And even if NRA had adduced such evidence, predominance would not be defeated, as "it is routine in class actions to have a final phase in which individualized proof must be submitted." *Chi. Teachers Union*, 797 F.3d at 442 (internal quotation marks omitted). Because "the [named] plaintiffs' claims and those of the class they would like to represent all derive from a single course of conduct by" NRA, *Suchanek*, 764 F.3d at 756, and because "adjudication of questions of liability … will achieve economies of time and expense," *Chi. Teachers Union*, 797 F.3d at 444, predominance is satisfied.

**B.     Superiority**

The four Rule 23(b)(3) factors all support a finding of superiority. First, "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), is minimal, given that no class member appears to have brought an individual suit; moreover, as Bernal suggests, Doc. 18 at 7, many class members may be unaware of their rights under the FDCPA. Second, because no other case involving this putative class's claims has been brought to the court's attention, "the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P.

17

23(b)(3)(B), is not a factor. Third, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," Fed. R. Civ. P. 23(b)(3)(C), favors predominance, and the Northern District of Illinois is as appropriate a forum as any given that NRA "maintains a registered agent within," "conducts business in," and "is licensed as a debt collection agency in" Illinois, that the class is limited to Illinois residents, and that Bernal resides in this District. Doc. 1 at ¶¶ 3, 4-6; Doc. 17 at ¶ 6. Fourth, in this case, "the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D), are minimal given the predominance of common issues, the readily available identity of all class members, and the relative ease of administering the claims process.

Finally, "as part of a careful application of Rule 23(b)(3)'s superiority standard, [the court] must recognize both the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663. Parallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery. That would make no sense.

NRA makes two arguments against superiority, both of which are unpersuasive. First, it contends that "the individualized fact-finding required in the present case, on multiple issues, makes a class action an inferior way of adjudicating the claims." Doc. 22 at 12. NRA does not explain what those individual issues are; to the extent that NRA is pressing its argument about possible differences in class members' contracts and the state laws to which those contracts are subject, the argument remains meritless for the reasons discussed above. Second, NRA contends that "members of the proposed class … plainly stand to gain more through individual adjudication of their claims" than through a class action. *Ibid*. NRA's argument on this point is conclusory, cites no case law, and is one sentence long, and accordingly is forfeited. *See Rahn v.*

*Bd. of Trs. of N. Ill. Univ.*, 803 F.3d 285, 295 (7th Cir. 2015) (holding that litigants "waive[] any claim" where "they have failed to cite any legal authority in support of [their] argument"); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped"). Even putting aside forfeiture, the Seventh Circuit has expressly rejected NRA's argument in the context of FDCPA suits. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing FDCPA's objectives.").

The proposed class thus satisfies the requirements of Rule 23(b)(3).

**Conclusion**

For the foregoing reasons, the court certifies the proposed class to pursue FDCPA claims against NRA. *See Stanley v. Nat'l Recovery Agency*, 2016 WL 4088394 (S.D. Ind. July 29, 2016) (certifying a materially identical Indiana class). "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B); *see Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("[T]he obligation to define the class falls on the [district] judge's shoulders under" Rule 23(c)(1)(B).).

The class is defined as follows: "All persons in the State of Illinois from whom NRA attempted to collect a delinquent consumer debt allegedly owed for a Six Flags account, via a collection letter identical to the letter that is attached to the complaint, as to which a percentage-

based charge for collection costs had been added to the debt, from February 3, 2015 to the present." The claim to be tried is whether NRA violated the FDCPA by seeking to collect delinquent consumer debt using a form collection letter that assesses percentage-based collection costs. Pursuant to Rule 23(g), David J. Philipps, Mary Elizabeth Philipps, and Angie K. Robertson of Philipps & Philipps, Ltd., are appointed as class counsel. The parties shall confer regarding class notice and shall file a status report with their joint proposal or competing proposals by September 14, 2016.

August 30, 2016

United States District Judge