UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH BERNAL, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | 16 C 1904 |
| Plaintiff, | ) ) | Judge Feinerman |
| vs. | ) ) | |
| NRA GROUP, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Joseph Bernal alleges that NRA Group, LLC, in an effort to collect a debt he owed to Six Flags Entertainment Corporation, sent him a form collection letter that violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Doc. 1. The letter demanded payment of Bernal's principal balance of $267.31 plus a percentage-based charge, labeled "Costs," of $43.28. Doc. 1-3. According to Bernal, Six Flags had no right to collect from him the $43.28 in costs, rendering NRA's demand unlawful under the FDCPA. Doc. 1 at ¶¶ 10-17.

The court certified a class of "[a]ll persons in the State of Illinois from whom NRA attempted to collect a delinquent consumer debt allegedly owed for a Six Flags account, via a collection letter identical to the letter [sent to Bernal], as to which a percentage-based charge for collection costs had been added to the debt, from February 3, 2015 to the present." Docs. 30-31 (reported at 318 F.R.D. 64 (N.D. Ill. 2016)). In cross-moving for summary judgment, the parties agreed that NRA's FDCPA liability turns on whether Bernal's contract with Six Flags—which provides in relevant part that if his account was in arrears, he would "be billed for any amounts that are due and owing plus any costs (including reasonable attorney's fees) incurred by [Six Flags] in attempting to collect amounts due or otherwise enforcing this agreement," Doc. 46-4 at

1

2—allowed him to be assessed the $43.28 in costs sought by NRA's letter. *See Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111 (7th Cir. 2008) ("In order to be entitled to collect a fee, [the debt collector] must show that the fee is either authorized by the governing contract or that it is permitted by [state] law."). According to Bernal, the contract allowed him to be charged only what it actually cost a debt collector to the collect the amount he owed Six Flags. Doc. 47 at 7; Doc. 67 at 6-8. According to NRA, the contract allowed Bernal to be charged what Six Flags paid a debt collector to collect the debt, even if that charge was a fixed percentage of the principal amount owed. Doc. 56 at 8-9; Doc. 68 at 3, 5. The court denied the cross-motions, holding that it was unnecessary to decide which interpretation was correct because neither side had adduced evidence entitling it to summary judgment under its proposed interpretation. Docs. 77-78 (reported at 2017 WL 2362568 (N.D. Ill. May 31, 2017)).

The court set the case for a jury trial, Doc. 79, and the parties later consented to a bench trial, Doc. 100. Before trial, Bernal asked the court to resolve the contract interpretation issue left open in the summary judgment opinion. Doc. 88. The court did so, agreeing with NRA that the contact, by providing that Bernal was subject to "costs (including reasonable attorney's fees) incurred by [Six Flags] in attempting to collect amounts due," expressly authorized the recovery of a reasonable percentage-based fee that a collection agency would charge Six Flags in connection with his account. Doc. 112. At trial, two witnesses testified: Bernal and NRA's president, Steven Kusic. Doc. 113.

In this opinion, the court first states its rationale for agreeing with NRA's interpretation of the contract. (This rationale is set forth first because the court interpreted the contract before trial, and that interpretation set the parameters of the evidence introduced at trial; for example, under the court's interpretation, the costs incurred by NRA in attempting to collect Bernal's debt

were irrelevant.) The court then articulates its Findings of Fact and Conclusions of Law from the bench trial. Finally, the court sets forth a post-trial procedure to resolve the claims of the absent class members.

I. **The Contract Permitted Six Flags to Charge Bernal the Contingent Fee It Would Have Paid a Debt Collector to Collect the Debt, Even if That Fee Was Contingent on Collection and Based on a Fixed Percentage of the Principal Amount That He Owed.**

The FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is *expressly authorized* by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f)(1) (emphasis added); *see Seeger*, 548 F.3d at 1111. As noted, Bernal's contract with Six Flags required him to pay "costs (including reasonable attorney's fees) incurred by [Six Flags] in attempting to collect amounts due." Doc. 46-4 at 2. Given the parties' agreement that NRA's FDCPA liability turns on what costs the contract allowed Bernal to be charged, the question here is whether that contract authorized Six Flags to charge Bernal only the costs incurred by a debt collector in collecting his debt to Six Flags (as he argues), or rather the amount that a debt collector would have charged Six Flags to collect that debt (as NRA argues). The latter reading is correct.

If Six Flags had used its own employees to collect Bernal's debt, then the contract, and thus the FDCPA, would have allowed Six Flags to recover only the internal expenses it incurred. But nothing prohibited Six Flags from retaining an outside debt collector to collect the debt, and the fees that Six Flags would have paid the debt collector had it successfully collected Bernal's debt are "costs" that Six Flags would have "incurred … in attempting to collect the amounts due." *Ibid*. It is beyond dispute that had Six Flags retained an attorney to pursue the debt, the contract would have entitled Six Flags to collect from Bernal the "reasonable attorney's fees" it

3

incurred. *Ibid*. Because "attorney's fees" are just one example of the "costs" the contract allowed Six Flags to recover, the same necessarily holds where, as here, Six Flags retained a debt collector rather than an attorney, as both result in "costs incurred [by Six Flags] in attempting to collect amounts due." *Ibid*. And the same holds if the debt collector would have charged Six Flags a percentage of the principal amount owed by the debtor as opposed to a flat fee or cost-plus fee, for regardless of how the fee is calculated, it is a cost that Six Flags would have incurred in collecting the debt. *See Gathuru v. Credit Control Servs.*, 623 F. Supp. 2d 113, 118-20 (D. Mass. 2009) ("The phrase 'collection costs' is broad enough to encompass a percentage-based fee.").

Bernal cites two decisions that reach the opposite result, but neither is persuasive. In *Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318 (8th Cir. 2000) (per curiam), the Eighth Circuit summarily affirmed the district court's ruling that a debt collector's percentage-based fee was not a cost "incident to collection" because it bore "no direct correlation to the actual costs of the [debt collector's] collection effort." *Kojetin v. C U Recovery, Inc.*, 1999 WL 33916416, at *7 (D. Minn. March 29, 1999). In *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 609-10 (11th Cir. 2014) (per curiam), the Eleventh Circuit adopted *Kojetin*'s reasoning. As *Gathuru* cogently explains, both decisions rest on the demonstrably incorrect premise "that the costs of collection for which the debtor could be held responsible were only the out-of-pocket costs incurred by the party doing the collecting—not the *creditor's* costs of collection, which would include the fee payable to the debt collector." 623 F. Supp. 2d at 118 n.7. And as shown above, the contract here unambiguously allowed Six Flags to charge Bernal *its* costs of collection, which include the amount a debt collector would have charged Six Flags to collect the debt. The

4

costs incurred by the *debt collector* in collecting the debt are beside the point; all that matters under the contract is what the debt collector charged Six Flags for its debt collection services.

The other principal authority cited by Bernal, *Seeger v. AFNI, Inc.*, *supra*, does not assist his cause. The contract in *Seeger*, between the debtor and Cingular Wireless, authorized Cingular to recover "the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, … incurred by CINGULAR in exercising any of its rights and remedies when enforcing" the contract. 548 F.3d at 1110. The Seventh Circuit held that the contract established "a right to collect fees of third parties, such as collection agency fees, court costs, and attorneys' fees," meaning that the contract "sp[oke] of Cingular's incurring those fees and then the consumer's reimbursing Cingular." *Id*. at 1113. As the facts in *Seeger* unfolded, however, the debt collector did not attempt to collect the debt on Cingular's behalf; rather, Cingular sold the debt to the debt collector, which then attempted to collect not only the debt, but also a percentage-based fee. *Id*. at 1110. The Seventh Circuit held *that* to be unlawful, reasoning that the debt collector "did not pay a collection fee to anyone" and therefore could not under the contract attempt to pass along any such fee to the debtor. *Id*. at 1113. *Seeger* therefore does not speak to the situation where the creditor actually uses a debt collector to collect the debt and then tries to pass along the debt collector's fee to the debtor.

Bernal also argues that the contract did not allow Bernal to be charged a collection fee because, at the time the letter was sent, Six Flags had not yet incurred the fee, which was contingent on collection. Bernal cites no authority for his contention, but several district court decisions back him up. *See Genova v. IC Sys., Inc.*, 2017 WL 2289289, at *5 (D.N.J. May 25, 2017); *Annunziato v. Collecto, Inc.*, 207 F. Supp. 3d 249, 259-61 (E.D.N.Y. 2016); *Ardino v. Solomon & Solomon, P.C.*, 2014 WL 268680, at *3-4 (D.N.J. Jan. 23, 2014); *Hernandez v.*

5

*Miracle Fin., Inc.*, 2011 WL 6328216, at *3 (D.N.J. Dec. 13, 2011); *Gathuru*, 623 F. Supp. 2d at 120-21; *Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076, 1083 (D. Minn. 2007). These decisions reason that, when a contract makes a debtor responsible for collection costs "incurred" by the creditor, a debt collector may not characterize a contingent fee as a recoverable cost before it actually charges the fee to the creditor, which happens only if and when the debtor pays the principal amount due.

That cannot be right. As acknowledged by one of those district court decisions, for purposes of determining whether the collection fee could be sought in a debt collection letter also seeking the principal amount due, the distinction between contingent and non-contingent fees "may … seem trivial, or even ridiculous," for the distinction would mean "that the debt collector could not legally collect all sums due in a single transaction," but rather could collect the collection fee only after the debtor paid the principal amount. *Gathuru*, 623 F. Supp. 3d at 120. Aside from being trivial or ridiculous, that distinction certainly makes no difference to a debtor. How could it possibly harm or mislead the debtor for a debt collector to set forth both amounts (the principal amount due and the collection fee) in a single letter, as opposed to first collecting the original debt and only then revealing and seeking payment of the collection fee? As Seventh Circuit precedent suggests, it cannot. *See Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 598 (7th Cir. 2004) ("[A] debt collector may include … collection costs in the dunning letter when the underlying contractual relationship between the debtor and creditor provided for the recovery of such … costs."); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004) ("[W]hen a debtor has contractually agreed to pay … collection costs, a debt collector may … state those … costs and include that amount in the dunning letter. Doing so does not violate the FDCPA.").

Indeed, as *Gathuru* also acknowledges, a debt collector in NRA's shoes likely would mislead a debtor in Bernal's shoes, and thus likely would violate the FDCPA, if it failed to inform him that he would have to pay a contingent fee upon making good on the original debt. *See id*. at 121 ("To make matters more complicated, the debt collector cannot ignore the existence of the contingent debt in its collection letters, as that would almost certainly be misleading. For example, a letter that stated or suggested that the debt would be extinguished if plaintiff paid [the principal amount owed] would almost certainly be improper."); *see also Fields*, 383 F.3d at 565 ("Indeed, refusing to quantify an amount that the debt collector is trying to collect could be construed as falsely stating the amount of debt."). So, under the above-cited district court decisions, a collection letter could not straightforwardly describe a contingent fee as a cost, but *still* would somehow have to make clear that the fee would *become* a cost if the debtor paid all or part of the principal amount owed. That makes no sense, either practically or legally. Simply identifying the fee as a cost, upfront, gives the debtor a better understanding of his or her obligations. The contractual term "incurred" should not be interpreted so narrowly as to keep debtors either partially or entirely in the dark. Instead, "incurred" means not only those collection costs that have already been billed to the creditor, but also those that will necessarily be billed to the creditor if the debtor pays the principal amount.

This interpretation does not run afoul of *Kaymark v. Bank of America, N.A.*, 783 F.3d 168 (3d Cir. 2015), or *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014), upon which several of the above-cited district court decisions rely. In *Kaymark* and *McLaughlin*, the debt collector billed the debtor for estimated future attorney's fees, which had not been incurred or even ascertained by the date of the collection letter. *See Kaymark*, 783 F.3d at 175; *McLaughlin*, 756 F.3d at 246. Here, by contrast, NRA was not estimating future

collection costs of uncertain magnitude. *Cf. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875-76 (7th Cir. 2000) (holding that a debt collector need not "determine what the amount of debt might be at some future date if for example the interest rate in the loan agreement was variable," which would be "impossible," but rather must "state the total amount due—interest and other charges as well as principal—on the date the [collection] letter was sent"). If Bernal wanted to pay the principal amount owed, his contract with Six Flags would require him to pay the fixed collection fee, which could be calculated with certainty in advance, that Six Flags would pay the debt collector. *Kaymark* and *McLaughlin* do not speak to that situation.

## II. Findings of Fact and Conclusions of Law

Pursuant to Federal Rule of Civil Procedure 52(a), the court enters the following Findings of Fact and Conclusions of Law. *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."); *Khan v. Fatima*, 680 F.3d 781, 785–86 (7th Cir. 2012) (discussing the requirements of Rule 52(a)(1)). The Findings of Fact are based not only on the evidence presented at the bench trial, but also on the parties' joint trial stipulations. The court makes its factual findings by the preponderance of the evidence. To the extent that any Findings of Fact may be considered Conclusions of Law, they shall be deemed Conclusions of Law, and vice versa. Having considered the evidence, the court finds that NRA did not violate the FDCPA.

### A. Findings of Fact

1. Bernal entered into a monthly membership agreement with Six Flags. Doc. 109-1 at ¶ 8.

2. The membership agreement provides, in relevant part:

   If your account is in arrears for more than 30 days (after you miss two payments) and the Minimum Term has not yet expired, then your account will be permanently cancelled and you will be subject to … costs (including reasonable attorney's fees) incurred by us in attempting to collect amounts due or otherwise enforcing this agreement.

   *Ibid.*; Joint Exh. 2. This provision appears in the membership agreement of all class members. Doc. 109-1 at ¶ 8.

3. Six Flags entered into a collection agreement with AR Assist, LLC, to collect its debts. Doc. 109-1 at ¶ 9; Joint Exh. 3.

4. The collection agreement provided, in relevant part, that AR Assist would charge Six Flags "a management fee of 5% of total gross amount actually collected by [AR Assist]," plus a "20% contingency rate on monies collected on [Six Flags's] placements in Bucket 3." Joint Exh. 3, § 3.1. "Bucket 3" refers to accounts that have been delinquent for 121-301 days. *Id.* at § 1.4.3.

5. Given these provisions, AR Assist's collection agreement with Six Flags allowed AR Assist to charge Six Flags 25% (the 5% management fee plus the 20% contingency rate) of any debt delinquent for 121-301 days that AR Assist collected on Six Flags's behalf.

6. AR Assist entered into a collection agreement with NRA to provide collection services on Six Flags accounts placed with NRA by AR Assist. Doc. 109-1 at ¶ 10; Joint Exh. 4.

7. Bernal incurred a $267.31 debt to Six Flags. Kusic Testimony; Joint Exh. 9 at 4.

8. As of February 17, 2015, Bernal's debt was approximately 232 days in arrears. Kusic Testimony; Joint Exh. 9 at 1. Bernal's debt therefore fell within Bucket 3 under AR Assist's contract with Six Flags.

9. NRA, acting as a debt collector within the meaning of the FDCPA, sent Bernal a letter on February 17, 2015, demanding payment of the $267.31 owed to Six Flags, plus $43.28 for collection "Costs." Doc. 109-1 at ¶¶ 3-4; Joint Exh. 1.

10. NRA's letter calculated the "Costs" by multiplying the principal amount owed ($267.31) by 16.19%. Kusic Testimony.

### B. Conclusions of Law

As demonstrated above, Six Flags's contract with Bernal allowed him to be assessed the fees that a collection agency would charge Six Flags for collecting Bernal's debt. Had Bernal paid his debt, and because that debt fell within Bucket 3 of AR Assist's contact with Six Flags, AR Assist would have been permitted to charge Six Flags 25% of the debt's $267.31 principal amount, or $66.82. NRA's letter passed on to Bernal collection costs equal to only 16.19% of the principal amount owed, or $43.28. The letter therefore passed on to Bernal an amount *less* than the amount that Bernal's contract with Six Flags allowed it to pass on to him. It necessarily follows that the letter's assessment of costs did not violate the FDCPA. *See Seeger*, 548 F.3d at 1111 ("In order to be entitled to collect a fee, [the debt collector] must show that the fee is either authorized by the governing contract or that it is permitted by [state] law.") (citing 15 U.S.C. § 1692f(1)); *cf. Jenkins v. Heintz*, 25 F.3d 536, 539-40 (7th Cir. 1994) (holding that the plaintiff stated a claim under § 1692f(1) for the debt collector's "adding an unauthorized charge to the debt"). (Bernal's counsel agreed at the summary judgment hearing that 16.19% is a reasonable

collection fee, so even if the court read the contract as requiring all costs, and not just attorney's fees, to be reasonable, NRA would still be authorized to recover the fee.)

### III. Absent Class Members

The fact that NRA's letter to Bernal attempted to pass on to him a lawful amount of costs does not mean the same is true for the letters sent to the absent class members. The class need not be decertified as a result, for the court's ability to resolve a crucial common issue—the meaning of the Six Flags membership agreement's cost provision—is sufficient to justify class certification. *See Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 551-52 (7th Cir. 2016) (noting that named plaintiff must "articulate at least one common question that is central to all of their claims," but that the common question "need not resolve every issue in the case"); *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 673 (7th Cir. 2015) (holding that whether the defendant's statements were false or misleading was a "'common contention … capable of classwide resolution' because the 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

To resolve each absent class member's claim, the parties must determine—based on the age of that class member's debt—the amount that AR Assist could have charged Six Flags for collecting that debt, and then compare that amount to the costs assessed in the collection letter sent to that class member. If, as is the case with Bernal, the costs assessed in the letter were less than or equal to the amount that AR Assist could have charged Six Flags for collecting the debt, there was no FDCPA violation; however, if the costs assessed in the letter were greater than the amount that AR Assist could have charged Six Flags for collecting the debt, there was an FDCPA violation.

## Conclusion

NRA's letter to Bernal did not violate the FDCPA. By November 21, 2017, the parties shall submit a status report indicating, based on the analysis set forth above, which of the absent class members received letters that violated the FDCPA and which of the absent class members received letters that complied.

November 1, 2017

United States District Judge